UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:12-cr-00237-APG-CWH |
| Plaintiff, | **ORDER** |
| vs. | |
| JOSEPH ANDRADE, *et al.*, | |
| Defendant. | |

Currently before the Court are three Reports and Recommendations entered by the Magistrate Judge.

## LEGAL STANDARD

The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636. When objections are timely filed, the Court is required to make a *de novo* determination of the portions of the report to which objection is made. 28 U.S.C. § 636(b)(1). When no objections are filed, the court is not required to review the report and recommendation. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). This Court has conducted a *de novo* review of the issues set forth in the objections to the three Reports and Recommendations.

/ / / /

/ / / /

1

# REPORT AND RECOMMENDATION (#104) ON MOTION TO DISMISS COUNTS I, III, and IV (#47)

On March 18, 2013, the Magistrate Judge issued a report and recommendation (#104) recommending that the Court deny Defendant Joseph Andrade's ("Andrade") Motion to Dismiss Counts One and Three of the Indictment for Failure to State an Offense and Motion to Dismiss Count Four of the Indictment as Multiplicitous (#47), which is joined by Defendant Julian Gaytan ("Gaytan"). On March 25, 2013, Andrade filed objections (#110) to the report and recommendation (#104). On March 26, 2013, the United States responded (#112) to the objections (#110). Because Andrade objects to the report and recommendation, the Court reviews *de novo*.

1. Counts One and Three

Andrade argues that Counts One and Three of the indictment (#1) must be dismissed because they fail to state an offense. Count One alleges that Defendants conspired to violate the Travel in Interstate Commerce in Furtherance of Racketeering Activity Act, Title 18 United States Code Section 1952(a)(2) (hereinafter, "Travel Act"). Specifically, Count One alleges that on or about May 19, 2012, Defendants conspired to travel and did travel from Arizona to Las Vegas, Nevada to engage in a residential burglary. Defendants allegedly entered a residence in Las Vegas with the plan of extorting money through physical threats.

Count Three alleges the underlying substantive violation of the Travel Act: namely, interstate travel in aid of racketeering activity. Section 1952 prohibits traveling in interstate or foreign commerce with the intent to "commit any crime of violence to further any unlawful activity" and thereafter performing or attempting to perform such acts. 18 U.S.C. § 1952(a). Unlawful activity as used in section 1952 includes extortion. 18 U.S.C. § 1952(b).

Defendants Andrade and Gaytan move to dismiss Counts One and Three because they contend that the same conduct may not be used to satisfy both the "unlawful activity" and "crime

of violence" prongs of Section 1952(a)(2) of the Travel Act.[1] The Magistrate Judge noted that there is an absence of controlling, on-point precedent on this issue. However, the Magistrate Judge found that dismissal of Counts One and Three is not warranted because Defendants' act in invading the home, which is a burglary, is a separate act from obtaining property by threat or physical force, which is extortion. The Magistrate Judge found that because burglaries and extortion are separate crimes with different elements, the two separate acts satisfy the Travel Act, assuming without deciding that two separate acts are required.

The Court agrees with the Magistrate Judge's interpretation of the case law on the issue. There is no controlling precedent requiring two separate acts under section 1952(a)(2), and the indictment alleges burglary as a crime of violence separate from the unlawful activity of extortion. Thus, the report and recommendation (#104) shall be approved and adopted as to Counts One and Three.

2. Counts Two and Four

The Magistrate Judge found that Count Four should not be dismissed as multiplicative of Count Two. Andrade objects on the basis that the government is attempting to predicate two section 924(c) convictions on a single criminal act. Count Two of the Indictment alleges that Defendants brandished a firearm in furtherance of a crime of violence as alleged in Count One, (which alleges conspiracy to commit a violation of the Travel Act). Count Four of the Indictment alleges that Defendants brandished a firearm during a crime of violence as alleged in Count Three (which is the substantive violation of the Travel Act). Both Count Two and Count Four are alleged to be violations of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(2).

The Double Jeopardy Clause "protect[s] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Missouri v.*

---

[1] Andrade's motion to dismiss (#47) includes additional arguments concerning the sufficiency of the indictment; however, because the objections to the Report and Recommendation (#104) do not object to the Magistrate Judge's findings and conclusions with respect to the additional arguments, the Court shall not review those portions of the Report and Recommendation (#104).

3

*Hunter*, 459 U.S. 359, 365 (1983) (citations omitted). The Ninth Circuit has held that in order to prevent double jeopardy, each section 924(c)(1) charge must be based on a "separate predicate offense." *United States v. Smith*, 924 F.2d 889, 894 (9th Cir. 1991). "A substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes." *United States v. Lopez*, 37 F.3d 565, 570 (9th Cir. 1994), *vacated on other grounds by* 516 U.S. 1022 (1995).

The Court agrees with the Magistrate Judge that Counts Two and Four are not duplicative of each other because a substantive crime and a conspiracy to commit that crime are separate predicate offenses for the purposes of double jeopardy and section 924(c). The report and recommendation (#104) shall be approved and adopted as to Counts Two and Four.

## REPORT AND RECOMMENDATION (#117) ON MOTION TO DISMISS (#39) AND MOTION TO SUPPRESS IDENTIFICATION (#40)

On April 5, 2013, the Magistrate Judge entered a Report and Recommendation (#117), recommending that the Court deny Defendant Julian Gaytan's Motion to Dismiss for the Government's Bad Faith Destruction of Exculpatory Evidence (#39) and Gaytan's Motion to Suppress Photo Lineup Identification (#40). On April 22, 2013, Gaytan filed objections (#118) to the Report and Recommendation (#117).

As part of the investigation into this case, North Las Vegas Police Department Detective Edwing Melgarejo ("Melgarejo") ordered two photographic lineups including Gaytan and Duran's driver's license photographs ("Gaytan array" and "Duran array"). Each array included either Gaytan or Duran and photographs of five others in an array of six photographs. Melgarejo ordered that the prints be printed in grayscale because the driver's license photographs had a blue background. Witness Jesus Medina ("Medina") identified Gaytan in the Gaytan array, but made no identification from the Duran array. Witness Doris Martinez ("Martinez") did not identify anyone from either array. Witness Misael Garcia ("Garcia") identified Gaytan, but made no identification in the Duran array. Witness Yuriana Ramirez ("Ramirez") identified Duran from the Duran array, and identified a non-suspect from the Gaytan array.

4

For each witness, Melgarejo retained copies of each array in which a suspect was identified, but did not retain the arrays presented to Martinez because she did not identify a suspect in either array. Melgarejo also disposed of the Duran arrays presented to Medina and Garcia because neither witness identified a suspect from those arrays.

Gaytan requests two forms of relief: (1) that the Court dismiss the charges against him because the Government destroyed photographic evidence, and (2) that the Court suppress evidence of the photographic lineup identification, and any in-court identification, or in the alternative, compel an in-court physical lineup.

**A. Lost Photo Arrays**

Due process requires the Government to "disclose to criminal defendants favorable evidence that is material either to guilt or to punishment." *California v. Trombetta*, 467 U.S. 479, 480-81 (1984). The Government, therefore, must preserve and turn over exculpatory evidence "that might be expected to play a significant role in the suspect's defense." *Id.* at 488. The evidence must be of such a nature that defendants are "unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. Gaytan argues that the Government's failure to retain four of the photographic lineups violates his due process rights because the evidence was exculpatory.

The loss of the lineups does not constitute a violation of due process because the evidence was not significantly exculpatory, and comparable evidence is readily available to Gaytan. In *Mitchell v. Goldsmith*, the Ninth Circuit found that lost photographic lineups for which witnesses failed to identify any suspects are irrelevant, not exculpatory, and not even "potentially useful." *Mitchell v. Goldsmith*, 878 F.2d 319, 322 (9th Cir. 1989). As in *Mitchell*, even if this evidence were potentially useful, Gaytan has not shown that there was bad faith on the part of the Government in failing to retain the photographic lineups. While the fact that certain witnesses failed to identify Defendants from the photographic lineups may be potentially exculpatory, that fact has been provided through testimony and through detective reports, and the loss of the lineups themselves is not material. Furthermore, comparable evidence in the form of

5

the other arrays that were preserved is available to the defendants, as the lost arrays included the same six photographs as the arrays that were preserved, but in a different order. Therefore, Gaytan's Motion to Dismiss (#39) must be denied.

**B. Unduly Suggestive Lineup**

Gaytan argues that altering the photographs for the lineup by using a greyscale printing format changed the complexion of the people in the lineups and therefore any identification from the lineups must be suppressed. Gaytan also argues that the lineup was unduly suggestive because Gaytan's photograph lacked a reflective shiny glow present in the other five photographs in the lineup, and because Gaytan has a distinctively-shaped hairline, eyebrows, and nostrils. Gaytan also argues that the identification was unreliable because the victims had very little opportunity to view the suspects.

In reviewing the constitutionality of pretrial identification procedures, a court must first determine whether the procedure was impermissibly suggestive. *United States v. Simoy*, 998 F.2d 751, 752 (9th Cir. 1993). If the court decides the procedure was impermissibly suggestive, it must decide whether the witness identification was nonetheless reliable. *Id.*

The photographic lineup was not unduly suggestive. Photographic identifications must be suppressed when the line-up is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Some suggestiveness is not enough to require suppression of the photographic identification. *See United States v. Collins*, 559 F.2d 561, 563 (9th Cir. 1977). Here, the lineups were not unduly or impermissibly suggestive. The other individuals in the Gaytan array appear to be of Hispanic descent, similar age, complexion, facial hair, hair color, and hair length. Gaytan's photograph does not appear unusually higher in resolution than the other photographs, and any differences in hairline, eyebrows, and nostrils do not rise to the level of being unduly suggestive. Nor does printing the array in greyscale to mask a difference in background color render a lineup unduly suggestive. For those reasons, Gaytan's Motion to Suppress Identification (#40) must be denied.

## REPORT AND RECOMMENDATION (#122) ON MOTION TO SUPPRESS ILLEGALLY-SEIZED STATEMENTS (#51)

On May 3, 2013, the Magistrate Judge entered a Report and Recommendation (#122) recommending that Gaytan's Motion to Suppress Illegally-Seized Statements (#51) be granted, after consideration of the briefs filed by both parties and evidence presented at an evidentiary hearing held on January 18, 2013. On May 20, 2013, the Government filed objections (#123). On May 31, 2013, Gaytan filed a response (#125) to the objections (#123).

The Government alleges that on May 19, 2012, the three male defendants entered a residence and threatened, assaulted, and battered the occupants. The defendants allegedly stole property from the residence. Perla Ramirez ("Ramirez") and Andrade were arrested at the scene, but two males fled. In Andrade's truck, found outside the residence, wallets containing the driver's licenses of Gaytan and Duran were discovered.

On June 30, 2012, Arizona Department of Public Safety Highway Patrol Officer Marcia Johnson ("Johnson") stopped Gaytan for speeding. Gaytan provided his driver's license, and Johnson discovered that a federal warrant had been issued in Nevada for Gaytan's arrest, and that Gaytan should be considered armed and dangerous. Johnson cuffed and searched Gaytan and placed him in her patrol car. Johnson then asked Gaytan whether he knew of the warrant and what it was for. Gaytan responded that the warrant was based on his wallet being found in a friend's vehicle when they went to Las Vegas. Gaytan also provided other statements about his former membership in the "31 Street Doble" gang and four months' probation remaining from a robbery charge. Gaytan requests that these "roadside statements" be suppressed.

Gaytan was detained in Buckeye, Arizona until July 3, 2012, when Officer Keland Boggs ("Boggs") of the Arizona Department of Corrections and FBI Special Agent Keith Thompson ("Thompson") transported him to a federal facility in Phoenix. Boggs testified that after securing Gaytan in Thompson's official vehicle, he advised Gaytan of his *Miranda* rights. Boggs testified that he read Gaytan his *Miranda* rights using a *Miranda* card issued to him by an Arizona law enforcement agency. Boggs did not bring the card to the evidentiary hearing, nor

could he recall the exact words he used in reciting the *Miranda* rights. Boggs testified that he has advised many suspects of their *Miranda* rights using the same card, and that he believes he advised Gaytan of his right to remain silent, that any statement made could be used against him in a court of law, his right to have an attorney prior to questioning, and that an attorney would be appointed for him if Gaytan could not afford one. Boggs testified that Gaytan indicated that he understood his *Miranda* rights and agreed to speak with Boggs and Thompson. Thompson testified that he was in the vehicle when Boggs read Gaytan his rights. Thompson's recollection of the wording of the *Miranda* warning given to Gaytan differs from Boggs' only in that Thompson testified that Gaytan was told he had a right to an attorney during the interrogation as well as prior to the interrogation.

Gaytan then responded to interrogation by admitting knowledge of everyone in the indictment with the exception of Duran. Gaytan denied being involved in the May 19, 2012 incident. Gaytan indicated that he left his wallet in a friend's vehicle. Gaytan also spoke about his family, his girlfriend, and his relationship with the "31 Street Doble" gang. Gaytan requests that these "transportation statements" be suppressed.

Gaytan argues that the roadside statements and the transportation statements should be suppressed because they were obtained in violation of his Fifth Amendment rights, involuntarily, and without *Miranda* warnings.

**A. Roadside Statements**

There is no dispute that Johnson reasonably stopped Gaytan's vehicle when it was traveling 72 miles per hour in a 45 mile per hour zone. Statements stemming from "custodial interrogation" of a defendant must be suppressed unless *Miranda* warnings were issued prior to any questioning. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). Custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. Custody turns on "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Rodriguez-Preciado*, 399 F.3d 1118,

1127 (9th Cir. 2005). Even when a suspect is in custody, however, questioning is a custodial interrogation only if questioning includes "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

During the traffic stop, Johnson placed Gaytan into custody by handcuffing him and placing him in her patrol car. Johnson had already confirmed Gaytan's identity and the validity of the warrant, and had completed the arrest by placing Gaytan in her patrol car. Her subsequent questions about whether Gaytan knew of the warrant and what it was for served no purpose other than obtaining information regarding Gaytan's participation in the charges alleged in the indictment.[2] Johnson's questions about the warrant were reasonably likely to elicit an incriminating response from Gaytan and thus, as part of a custodial interrogation, should have been accompanied by *Miranda* warnings. Therefore, the Motion to Suppress (#51) must be granted with respect to the roadside statements.

**B. Transportation Statements**

Gaytan argues that the *Miranda* warnings given to him prior to making the transportation statements were defective. The Magistrate Judge agreed and recommends that the transportation statements be suppressed. At the evidentiary hearing held on the issue, Boggs testified that he used a standard card issued by an Arizona law enforcement agency that he had been using for several years. However, the Government did not provide a copy of this *Miranda* card at the evidentiary hearing. A dispute exists whether Boggs warned Gaytan that he had the right to an attorney during interrogation. Boggs testified that he did not recall the precise wording he used to provide Gaytan with the *Miranda* warnings, but that he believes he advised Gaytan that he had

---

[2] Although the officer's subjective intent is relevant, it is not decisive . . . because in determining whether interrogation occurred, the focus is upon the defendant's perceptions. *United States v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994) (citations omitted).

9

the right to remain silent, that any statement he made could be used against him in a court of law, that he had the right to an attorney prior to questioning, and that an attorney would be appointed for him if he could not afford one and desired one. Thompson testified that he was in the vehicle when Boggs warned Gaytan of his *Miranda* rights, and that he believes Gaytan was told of the right to an attorney during questioning.

In *United States v. Bland*, the *Miranda* warnings given to the defendant informed him that he had a right to an attorney prior to questioning, but did not mention that he was entitled to have an attorney during questioning. *United States v. Bland*, 908 F.2d 471, 473-74 (9th Cir. 1990). The Ninth Circuit found that although a "talismanic incantation" of *Miranda* warnings is not required, the warnings given in *Bland* were inadequate because it is critically important that a defendant be advised of the right to counsel during questioning. *Id.* at 474 (citations omitted). The Government cites an earlier case in which the Ninth Circuit held that "otherwise unobjectionable *Miranda* warnings will not be found inadequate simply because they fail explicitly to state that an individual's right to appointed counsel encompasses the right to have that counsel present prior to and during questioning." *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989). However, in *Connell*, the defendant had been given two different versions of the *Miranda* warnings, one of which advised the defendant of the right to counsel before and during questioning. *Id.* While *Miranda* warnings need not be verbatim, Ninth Circuit precedent is clear that a defendant must be advised that he has a right to counsel during questioning; simply advising him that he has the right to counsel prior to questioning is inadequate. *Bland*, 908 F.2d at 474.

The Government requests that the Court receive further evidence in the form of a copy of the *Miranda* warning card allegedly used by Boggs (#126-1). The Government attached a copy of the *Miranda* card to its Reply (#126) in support of its Objection (#123) to the Report and Recommendation (#122). The Ninth Circuit has held that "a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir.

2000). The copy of the card was not accompanied by any authenticating evidence. The Government does not provide any facts demonstrating good cause why the *Miranda* card allegedly used by Boggs was not provided earlier.

The Court is not inclined to allow the Government a second opportunity to present evidence on this issue in the absence of good cause. The Government had ample opportunity to present the Court with this evidence, which was not attached to either its Response (#62) to the Motion to Suppress (#51) or its Objection (#123) to the Report and Recommendation; nor was it presented at the evidentiary hearing.[3]

The Magistrate Judge found that the substance of Gaytan's constitutional rights under *Miranda* was not clearly conveyed based on the evidence presented by the Government. This Court agrees, and finds that Gaytan's Motion to Suppress (#51) must be granted with respect to the transportation statements because the *Miranda* warnings given to Gaytan were inadequate.[4]

## CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation (#104) recommending that the Motion to Dismiss Counts One, Three, and Four of the Indictment (#47) be denied is **APPROVED AND ADOPTED**. The Motion to Dismiss (#47) is **DENIED**.

---

[3] The Government moves to strike Gaytan's Surreply (#127) to the Government's Reply as a rogue document. Because the Government (for the first time) attached a copy of the *Miranda* warning card to its Reply (#126), it is reasonable in this circumstance to allow Gaytan to address this new evidence via a Surreply. Accordingly, the Government's Motion to Strike the Surreply (#130) is denied.

[4] Gaytan also argues that even if the *Miranda* warning was adequate, the transportation statements must be suppressed under *Missouri v. Seibert*, 542 U.S. 600 (2004) because of the previously-obtained unwarned roadside statements. The Magistrate Judge briefly addressed this argument and found that because there is no evidence that Boggs and Thompson knew of Gaytan's roadside statements, Gaytan's motion to suppress should not be granted on the basis of *Seibert*. The Magistrate Judge also found to be without merit Gaytan's argument for suppression based on an allegation that he was brought before a magistrate judge after an unnecessary delay. Because of this Court's ruling that the *Miranda* warning given to Gaytan was inadequate, these arguments are moot.

11

Defendants Gaytan's and Ramirez's Requests to Join (##113, 115) Andrade's Objection are **GRANTED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (#117) recommending that the Motion to Dismiss (#39) and Motion to Suppress Photo Line Up Identification (#40) be denied is **APPROVED AND ADOPTED**. The Motions (##39, 40) are **DENIED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (#122) recommending that the Motion to Suppress Illegally-Obtained Statements (#51) be granted is **APPROVED AND ADOPTED**. The Motion (#51) is **GRANTED**.

DATED this 17th day of June, 2013.

**ANDREW P. GORDON**
**UNITED STATES DISTRICT JUDGE**